E

X

H

I

B

I

T

F

**EXHIBIT F**

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

WILLIAM P. RYND,

      Plaintiff,

v.                       CASE No. 8:09-CV-1556-T-27TGW

NATIONWIDE MUTUAL
FIRE INS. CO.,

      Defendant.

_____

REPORT AND RECOMMENDATION

      The plaintiff, who was insured by the defendant under an automobile insurance policy, alleged in this lawsuit that the defendant acted in bad faith by failing to settle a personal injury claim against the plaintiff resulting from an automobile accident. A jury found in favor of the plaintiff on this claim.

      The plaintiff has filed a Verified Motion for Attorney's Fees and Costs (Doc. 202). The defendant argues that the amount of the attorneys' fee is unreasonable and some of the costs are not recoverable (Doc. 219). The motion was referred to me for a report and recommendation (Doc. 215).

Having considered the materials submitted and the governing legal standards, I recommend that the plaintiff be awarded an attorneys' fee of $218,616, and $12,464.32 in costs.

## I.

On December 19, 2006, a pick-up truck driven by the plaintiff collided with a motorcycle operated by Melvin D. Crawford, resulting in serious injuries to Crawford (Doc. 2, ¶6). At the time of the collision, the plaintiff was insured by defendant Nationwide Mutual Fire Insurance Company under an automobile insurance policy which provided a maximum benefit of $100,000 per person for bodily injury (id., ¶¶7, 9). The plaintiff timely reported the accident to the defendant, which did not deny coverage (id., ¶¶8, 14). Crawford's injury claim, however, was not resolved. Consequently, Crawford filed a lawsuit against the plaintiff, which resulted in a jury award in favor of Crawford for over two million dollars, well in excess of the automobile insurance policy liability limit (id., ¶¶17, 18).

In July 2009, the plaintiff filed this lawsuit against Nationwide and attorney Sonya Wesner, who represented the plaintiff in the lawsuit by Crawford. Count I of the complaint alleged that Nationwide breached its duty of good faith under the automobile insurance policy by failing to, among other

-2-

things, "settle [] Crawford's claims against the plaintiff within the available policy limits when it could have and should have done so" (id., ¶22e). Count II of the complaint alleged that attorney Wesner had a "conflict of interest" because she was employed by the defendant when she was assigned to represent the plaintiff in the lawsuit brought by Crawford, and that Wesner failed to use independent judgment to advise the plaintiff of opportunities which would have protected him from a judgment in excess of his policy limits (id., ¶¶ 34, 35). The plaintiff sought monetary damages equal to the amount of the excess judgment from Crawford's lawsuit (id., p. 9). The case was subsequently removed to federal court (Doc. 1).

The plaintiff voluntarily dismissed count II of the complaint against Wesner after Wesner filed a Motion to Dismiss or, for More Definite Statement (Docs. 14, 17, 18). A particularly contentious and protracted discovery period followed, during which counsel for both parties were admonished for being uncooperative (Doc. 53, p. 18; Doc. 75, pp. 20-21).[1] Furthermore, I expressed, on more than one occasion, that the plaintiff's

---

[1] The parties' failure to cooperate with each other is reflected in the attorneys' fees memoranda. Thus, both parties have advocated untenable positions which has unnecessarily increased the judicial and party resources necessary to resolve this motion.

discovery requests were overbroad, and sought irrelevant information (see, e.g., Doc. 53, pp. 9, 12; Doc. 75, pp. 8-11, 19-20).

In January 2011, attorneys Stephen Marino and Danya Pincavage from the Miami law firm of Ver Ploeg and Lumpkin, P.A. (VPL) joined solo practitioner Jason Mulholland as counsel for the plaintiff in this case. In June 2011, the plaintiff's claim was tried before a jury. After a three-day trial, the jury returned a verdict for the plaintiff, finding that the defendant (Doc. 195):

> act[ed] in bad faith by failing to settle the claim
> brought by Melvin Crawford within the policy
> limits when, under all the circumstances, it could
> and should have done so, had it acted fairly and
> honestly toward its insured and with due regard for
> his interests.

A judgment was entered in favor of the plaintiff in the amount of $2,215,914.77 (Doc. 217).

The plaintiff subsequently filed a Verified Motion for Attorney's Fees and Costs (Doc. 202). He requests an attorneys' fee of $778,308, which includes a contingency risk multiplier of 2.0, and costs of $13,502.12 (id., pp. 10, 12). The defendant opposes the motion, arguing that a reasonable attorneys' fee in this case is $139,222.50, and that the reimbursable costs total $10,293.09 (Doc. 219, p. 20).

In support of their contentions, both parties submitted expert opinions, and plaintiff's counsel submitted their time records (Docs. 202-1, 202-2, 216-2, 220-1).[2] The plaintiff requested, and was granted, an opportunity to file a reply to the defendant's opposition memorandum (Doc. 225). Oral argument was subsequently conducted on the motion.

II.

Plaintiff's counsel seeks an award of an attorneys' fee under §627.428(1), Fla. Stat., which provides in pertinent part:

> Upon the rendition of a judgment or decree by any of the courts of this state against an insurer and in favor of any named ... insured ... under a policy or contract executed by the insurer, the trial court ... shall adjudge or decree against the insurer and in favor of the insured ... a reasonable sum as fees or compensation for the insured's ... attorney prosecuting the suit in which the recovery is had.

Based on the jury verdict, the plaintiff is entitled to receive from the defendant an attorneys' fee under this statute. Further, the defendant does not dispute the plaintiff's entitlement to an attorneys' fee; rather, its challenge is solely to the amount (Doc. 219, p. 1).

---

[2]The time records that were submitted in the official record are redacted. The plaintiff submitted separately to the court an unredacted version of time sheets pursuant to the court's order.

-5-

Section 627.428, Fla. Stat., directs that the prevailing insured be awarded a "reasonable" attorneys' fee. Florida has adopted the federal lodestar approach as the foundation for setting reasonable fee awards. Florida Patient's Compensation Fund v. Rowe, 472 So.2d 1145, 1150 (Fla. 1985); Bell v. U.S.B. Acquisition Co., Inc., 734 So.2d 403, 406 (Fla. 1999).[3] This method requires the court to determine a "lodestar figure" by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate for the services of the prevailing party's attorney. Id. The fee applicant bears the burden of presenting satisfactory evidence to establish that the requested rate is in accord with the prevailing market rate and that the hours are reasonable. Norman v. Housing Authority of the City of Montgomery, 836 F.2d 1292, 1303 (11th Cir. 1998); Florida Patient's Compensation Fund v. Rowe, supra, 472 So.2d at 1150-51.

In computing the lodestar amount, the following factors, enumerated in Rule 4-1.5 of the Rules Regulating the Florida Bar, are to be considered (Standard Guaranty Ins. Co. v. Quanstrom, 555 So. 2d 828, 830-31 n.3 (Fla. 1990)):

---

[3]In diversity cases, the determination of a reasonable attorneys' fee is governed by state law. See All Underwriters v. Weisberg. 222 F.3d 1309, 1311-12 (11th Cir. 2000).

(1) The time and labor required, the novelty, complexity, and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) The likelihood that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) The fee, or rate of fee, customarily charged in the locality for legal services of a comparable or similar nature;

(4) The significance of, or amount involved in, the subject matter of the representation, the responsibility involved in the representation, and the results obtained;

(5) The time limitations imposed by the client or by the circumstances and, as between attorney and client, any additional or special time demands or requests of the attorney by the client;

(6) The nature and length of the professional relationship with the client;

(7) The experience, reputation, diligence, and ability of the lawyer or lawyers performing the service and the skill, expertise, or efficiency of effort reflected in the actual providing of such services; and

(8) Whether the fee is fixed or contingent....

Once the lodestar is determined, the court must consider in contingency fee cases whether an enhancement of the lodestar is appropriate. <u>Standard Guaranty Ins. Co.</u> v. <u>Quanstrom</u>, <u>supra</u>, 555 So.2d at 831.

The plaintiff argues that he is entitled to a court awarded attorneys' fee of $778,308, which comprises a lodestar of $389,154 multiplied by two (Doc. 202, p. 10). The defendant argues that a reasonable attorneys' fee in this case is a lodestar of $139,222.50, and that no multiplier of this sum is warranted (<u>see</u> Doc. 219, p. 20).

### A. REASONABLENESS OF THE NUMBER OF HOURS EXPENDED

Florida courts first calculate the number of hours reasonably expended on the litigation. In this regard, "the attorney fee applicant should present records detailing the amount of work performed. Counsel is expected, of course, to claim only those hours that he could properly bill to his client. Inadequate documentation may result in a reduction in the number of hours claimed, as will a claim for hours that the court finds to be excessive or unnecessary." <u>Florida Patient's Compensation Fund</u> v. <u>Rowe</u>, <u>supra</u>, 472 So.2d at 1150 (citations omitted). The fee opponent then "has the burden of pointing out with specificity which hours should be deducted." <u>Centex-Rooney</u>

-8-

Const. Co., Inc. v. Martin County, 725 So.2d 1255, 1259 (Fla. App. 1999); see also Norman v. Housing Authority of the City of Montgomery, supra, 836 F.2d at 1301.

The plaintiff in this case seeks compensation for 1098.5 hours of legal work on this matter, comprising 922.6 hours billed by three attorneys and 175.8 hours by two paralegals (Doc. 202, p. 8). This time was spent on all facets of the litigation, including pre-suit activities, lengthy discovery practice, and a three-day jury trial. Specifically, the attorneys seek compensation for the following number of hours: Jason Mulholland-535.1 hours, Stephen A. Marino, Jr.-127.5 hours, and Danya J. Pincavage-260.1 hours (id.). Additionally, the plaintiff seeks reimbursement for 152.3 hours of services by paralegal Linda M. Mulhall, and 23.5 hours of services by paralegal Ronni A. Lowe (id.).[4]

Plaintiff's counsel asserts that this figure reflects the removal of "excessive, redundant or otherwise erroneous charges" (id.). Further, in support of the reasonableness of the hours requested, the plaintiff has submitted the affidavit of its fee expert, Dennis Gus Diecidue (Doc. 202-2, pp. 2-5).

---

[4]On the time sheets the plaintiff's legal team is identified as follows: Jason Mulholland (JM), Stephen A. Marino, Jr. (SAM), Danya J. Pincavage (DJP). Linda M. Mulhall (LMM), and Ronni A. Lowe (RAL).

Diecidue, a member of the Florida Bar since 1969, is a solo practitioner with the Diecidue Law Firm in Tampa, Florida (id., ¶1). He is board-certified in civil trial law and is experienced in complex civil litigation and bad faith cases (id., ¶¶2, 3). Diecidue opines that "the time reflected in the billing records is commensurate with what [he] would expect to find in matters and litigation of this type" (id., ¶7).

The defendant argues that the number of hours claimed by the plaintiff is unreasonable (Doc. 219, p. 10). In support of this contention, the defendant proffers the affidavit of its fee expert, Lisa A. Oonk (Doc. 220-1, pp. 1-14). Oonk is an AV-rated attorney who has been a member of the Florida Bar since 1994 (id., ¶2; Doc. 219-2). She practices exclusively civil litigation, at least 50% of which is insurance litigation, with the Clearwater firm of Dalan, Katz & Siegel, P.L. (Doc. 220-1, ¶2). Oonk opines that hundreds of hours claimed by plaintiff's counsel are not compensable (see Doc. 219-2). Oonk's specific objections, which are presented in Exhibits B-2 through B-10, are categorized by topic (id.), and explained in her affidavit (Doc. 220-1, pp. 4-11). Those objections are addressed below.

1. <u>Ex. B-2: Clerical work</u>

The defendant requests a reduction of 17.5 hours of Mulholland's time because the entries purportedly reflect tasks that are "administrative/secretarial in nature" (Doc. 219-2, pp. 17-22). "[A] fee applicant is not entitled to compensation at an attorney's rate simply because an attorney undertook tasks which were mundane, clerical or which did not require the full exercise of an attorney's education and judgment." <u>Norman</u> v. <u>Housing Authority of the City of Montgomery</u>, <u>supra</u>, 836 F.2d at 1306.

However, numerous entries identified by the defendant in Exhibit B-2 are not properly characterized as secretarial work. For example, time spent considering objections to a request to produce and communicating to resolve disputes over discovery production (<u>see</u>, <u>e.g.</u>, Doc. 219-2, p. 21, 8/27/10) is legal work. Furthermore, it is appropriate for an attorney to review notices of depositions to apprise himself of the case status and identify objectionable requests. Moreover, it is not unreasonable for an attorney to communicate, on occasion, with opposing counsel regarding scheduling matters.

On the other hand, the defendant has identified many time entries where Mulholland seeks compensation, at an hourly rate of $425, for scheduling depositions and the mediation, and various other administrative

-11-

tasks (see, e.g., id., p. 21, 8/19/10, 9/1/10). Such secretarial tasks are not compensable, and their inclusion in the time records shows a lack of billing judgment. See Missouri v. Jenkins by Agyei, 491 U.S. 274, 288 n. 10 (1989) ("It is appropriate to distinguish between legal work ... and other work which can often be accomplished by non-lawyers but which a lawyer may do because he has no other help available..."). Particularly egregious time entries include "[f]ormulate and prepare email to Marcus re: assumption that 'reply all' button was used"; the review of an "e-mail sent to wrong address"; and "Exchange of emails with Marriott [hotel] re: cancellation of one room, speakerphone" (Doc. 219-2, pp. 18, 19, 21; 2/19/10, 5/14/10, 9/01/10).

The plaintiff argued at the hearing that nothing precludes an attorney from doing administrative tasks; however, the plaintiff fails to show that secretarial tasks are reimbursable under a fee-shifting statute. Although counsel is a solo practitioner without secretarial assistance, costs associated with solely clerical tasks are overhead expenses which are not compensable in the attorneys' fee award. See Allen v. United States Steel Corp., 665 F.2d 689, 697 (5th Cir. 1982).

Accordingly, a reduction of Mulholland's hours for secretarial work is warranted. The Supreme Court has cautioned that "[a] request for

attorney's fees should not result in a second major litigation." <u>Hensley</u> v.
<u>Eckerhart</u>, 461 U.S. 424, 437 (1983). Therefore, in determining the hours to
be reduced, the court "may conduct an hour-by-hour analysis or it may reduce
the requested hours with an across-the-board cut." <u>Bivins</u> v. <u>Wrap It Up, Inc.</u>,
548 F.3d 1348, 1350 (11th Cir. 2008). In this case, an analysis of six pages of
objectionable entries in six-minute increments is impractical, and a waste of
judicial resources. <u>See</u> <u>Loranger</u> v. <u>Stierheim</u>, 10 F.3d 776, 783 (11th Cir. 1994).

I recommend a reduction of seven hours of Mulholland's time for
non-compensable secretarial activity. The defendant's requested reduction of
17.5 hours is clearly too high because it incorrectly labeled numerous entries
as secretarial. A seven-hour reduction affords reimbursement for tasks which
are compensable, but also properly reduces time for secretarial work.

### 2. Ex. B-3 and Ex. B-8: Unsuccessful work

Exhibit B-3 identifies 97.6 hours of Mulholland's time that the
defendant contends should be excluded because the tasks "did not benefit
litigation" or "were not successful" (Doc. 219-2, pp. 23-34). These time entries
fall into three categories: (1) "unnecessary/unsuccessful discovery motions,"
(2) litigation of issues regarding Wesner, and (3) litigation regarding the
defendant's decision not to enter into a Cunningham agreement (<u>see</u> <u>id</u>.).

-13-

Additionally, in Exhibit B-8 the defendant seeks exclusion of 11.5 hours of work by Marino and Pincavage "for activities that did not benefit litigation/ were not successful" (id., p. 58). These objections concern Motions in Limine and a Motion to Quash (id.).

Time spent on "discrete and unsuccessful claims" should be reduced from a fee award. Duckworth v. Whisenant, 97 F.3d 1393, 1397 (11th Cir. 1996); Florida Patient's Compensation Fund v. Rowe, supra, 472 So.2d at 1151. However, time is not excluded simply because a motion was denied. Hensley v. Eckerhart, supra, 461 U.S. at 440; Blum v. Witco Chemical Corp., 829 F.2d 367, 378 (3d Cir. 1987); American Charities for Reasonable Fundraising Regulation, Inc. v. Pinellas County, 278 F.Supp.2d 1301, 1320-21 (M.D. Fla. 2003).

Most of the defendant's objections in Exhibit B-3 relate to unsuccessful discovery efforts and motions (see Doc. 219-2, pp. 25-32). However, the defendant has not cited any legal authority supporting the reduction of hours for a motion or discovery work that, although not meritorious in itself, was pursued in connection with a successful claim. Contra Hensley v. Eckerhart, supra. Consequently, I recommend that objections to discovery work on this basis be rejected.

-14-

On the other hand, the defendant meritoriously argues that time spent prosecuting its theory concerning Wesner is not recoverable because it is a discrete, unsuccessful claim (Doc. 220-1, p. 7). Initially, the plaintiff identified Wesner in a separate count of the complaint, alleging that her employment by Nationwide created a conflict of interest. The plaintiff voluntarily dismissed his claim against Wesner (Doc. 17).

Subsequently, the plaintiff pursued discovery against Wesner, intending to argue that she was a "key witness to several missed opportunities to settle, and she took certain actions that were adverse to her client, Mr. Rynd, at the behest of her employer" (see Doc. 225, p. 7). The defendant successfully moved in limine to exclude evidence regarding Wesner's purported conflict of interest at trial (Doc. 219-1). The defendant asserts that, based on the dismissal of the claim against Wesner, and the court's exclusion of Wesner evidence from trial, this is an unsuccessful claim (Doc. 220-1, p. 7).

Furthermore, this is a distinct claim. Thus, Wesner had no role in this matter until after efforts to settle within the policy limits had been exhausted (Doc. 219-1, pp. 7, 8). Consequently, the district court held that evidence regarding Wesner was "irrelevant to the plaintiff's cause of action"

-15-

because there is no evidence that her actions had any impact on the ability to settle the case within the policy limits (id., pp. 10, 14-15, 18).

The plaintiff argues that the claims against Wesner "cannot be deemed unsuccessful" because the court reversed its ruling on the morning of trial that theories regarding Wesner could not be introduced at trial (Doc. 225, p. 7). However, the plaintiff did not substantiate its assertion with evidence that the court reversed its ruling. Furthermore, no evidence regarding this claim was presented at trial (see id.). Moreover, the prevailing claim at trial was that the defendant "act[ed] in bad faith by failing to settle the claim ... within the policy limits" (Doc. 195) and, as discussed, evidence regarding Wesner was irrelevant to that claim. In sum, based on the evidence before me, it is appropriate to deduct plaintiff's counsel's time pertaining to Wesner because it was a distinct and unsuccessful claim. In this regard, it is estimated that 27.7 hours of Mulholland's time pertains to the unsuccessful claim against Wesner.[5]

---

[5]The defendant grouped its three categories of objections into one exhibit without identifying the time corresponding to each category. Only time entries pertaining solely to Wesner are included in this estimate.

The defendant argues further that the plaintiff's argument that it acted in bad faith by failing to enter into a Cunningham agreement is also a discrete and unsuccessful claim. The defendant presents evidence that the court found the Cunningham agreement, which pertains to an insurance company's settlement of a policy in excess of the policy limit, irrelevant and unduly prejudicial (Doc. 219-1, pp. 17-18). Consequently, the court excluded evidence of a Cunningham agreement at trial. The plaintiff did not present any evidence that the court reversed this ruling.

However, the defendant has not identified any time entries regarding the Cunningham agreement. The defendant states that matters concerning Wesner and the Cunningham agreement were addressed in response to motions in limine, and suggests a 50% reduction of time expended on all motions in limine because the plaintiff lost on 50% of the issues presented by the motions in limine (Doc. 219-2, p. 58). However, the defendant fails to show that a 50% deduction reasonably estimates the time spent on the Wesner and Cunningham claims. Therefore, this suggested reduction is appropriately rejected.

The defendant also seeks exclusion of hours spent on "routine presuit activities" (Doc. 219, p. 13). After excluding Wesner-related time

-17-

entries, only a couple of pre-suit entries remain (<u>see</u> Doc. 219-2, pp. 23, 24). This time regards drafting the complaint. It is reasonably considered time expended in "prosecuting the suit." Accordingly, I recommend that this time be compensated because this time expenditure was necessitated by the defendant's conduct. <u>See</u> <u>U.S. Fidelity and Guar. Co.</u> v. <u>Rosado</u>, 606 So.2d 628, 629 (Fla. App. 1992)(pre-suit work that is necessitated by the insurer's conduct is recoverable); <u>Storfer</u> v. <u>Guarantee Trust Life Ins. Co.</u>, 2011 WL 213461 at *4 (S.D. Fla. 2011)(unpub. dec.)(same); <u>Wendel</u> v. <u>USAA Casualty Ins. Co.</u>, 2009 WL 1971451 at *3 (M.D. Fla. 2009)(unpub. dec.)(the preclusion of necessary pre-suit fees would defeat the statute's goal of placing the insured in the place it would have been if the insurer had seasonably paid the claim without causing the insured to retain counsel); <u>but see</u> <u>Dunworth</u> v. <u>Tower Hill Preferred Ins. Co.</u>, 2006 WL 889424 at *2 (S.D. Fla. 2006)(unpub. dec.) (pre-suit work is not recoverable because the statute is limited to fees for "prosecuting the suit") .

In sum, I recommend that 27.7 hours of Mulholland's time be deducted for work on distinct, unsuccessful claims.

### 3. Exhibits B-4 and B-9:Travel time

Exhibit B-4 lists 49.3 hours of local and long-distance travel time billed by Mulholland. The defendant argues this time should be eliminated because "[t]ravel time is an overhead expense not billable to clients" (Doc. 219-2, p. 36).

Further, the defendant argues that Mulholland's travel time to Ft. Lauderdale and Miami, in order to confer with Miami co-counsel, is not compensable because it was unnecessary to retain out-of-town counsel to assist with this case (id.). The defendant argues that 90.6 hours of travel time by VPL counsel from its Miami office to Tampa, which is identified in Exhibit B-9, should be excluded for the same reasons (Doc. 220-1, p. 11).

The plaintiff responds that travel time is not an overhead expense (Doc. 225-1, p. 20). Further, he contends that the defendant cannot refuse to pay plaintiff's counsel's travel time if the defendant paid for its counsel's travel time (id.).

Neither party has cited to any legal authority regarding reimbursement of an attorney's travel time under §627.428, Fla. Stat. However, Florida law holds that out-of-town counsel travel time to the litigation venue is not compensable absent a showing that a competent local attorney could not

-19-

be obtained. <u>Stanton</u> v. <u>Stanton,</u> 50 So.3d 688, 691 (Fla. App. 2010); <u>Fence</u>

<u>Wholesalers of America, Inc.</u> v. <u>Beneficial Commercial Corp.</u>, 465 So.2d 570

(Fla. App. 1985); <u>Kearney</u> v. <u>Auto-Owners Ins. Co.</u>, 713 F.Supp.2d 1369, 1379

(M.D. Fla. 2010).[6] As District Judge Susan C. Bucklew stated, "[a]lthough [a

party] can opt to hire an out-of-town lawyer, an opposing party should not be

required to pay for this choice unless no local counsel can be found." <u>Kearney</u>

v. <u>Auto-Owners Ins. Co.</u>, <u>supra</u>, 713 F.Supp.2d at 1379 (deducting from an

attorney's fee award under a Florida statute travel time for out-of-town

counsel).

       The plaintiff has not made any showing that competent co-counsel

could not be found locally in the Tampa Bay area. Further, it is unreasonable

to have the defendant pay for travel time incurred as a result of the plaintiff's

personal preference for Miami co-counsel. Accordingly, the 10.3 hours

identified by the defendant on Mulholland's time sheet for travel to Ft.

Lauderdale/Miami to confer with co-counsel (Doc. 219-2, p. 36, 4/18/11, 5.4;

5/4/11, 4.9) should be excluded. Similarly, VPL attorneys Marino and

---

[6]The plaintiff's case of <u>B-K Cypress Log Homes, Inc.</u> v. <u>Auto-Owners Ins. Co.</u>,
Case 1:09-CV-211-MP-GRJ (Doc. 225-2, Ex. B), is inapposite because in that case travel
time was awarded as a sanction under Rule 37(b), F.R.Civ.P. (<u>id.</u>, pp. 7-8).

Pincavage are not entitled to reimbursement for their travel time from their Miami office to Tampa. The plaintiff has identified two errors in Exhibit B-9 (Doc. 225-1, p. 44), so that the total number of hours properly reduced for out-of-town travel by VPL attorneys is 81.5 hours (28.1 hours for Marino, and 53.4 hours for Pincavage).

The defendant also seeks to exclude time identified in Exhibit B-4 for Mulholland's "[t]ravel ... inside the Middle District" of Florida to attend depositions and hearings because it is an overhead expense (Doc. 219, p. 14). However, the defendant provides no legal authority in support of this contention. To the contrary, an overhead expense is a cost incurred by the firm on a day-to-day basis, no matter whom it represents, such as rent, utilities, and office supplies. See In re Hillsborough Holdings Corp., 127 F.3d 1398, 1402-03 (11th Cir. 1997). Furthermore, it is reasonable to compensate an attorney for local travel to depositions and hearings because it is necessitated by the case, and reduces the attorney's time to work on other matters.

The defendant cites to Danow v. Law Offices of David E. Borback, P.A., 634 F. Supp.2d 1337 (S.D. Fla. 2009), for the proposition that travel time within a district is not compensable (Doc. 219, p. 14). However, there was no explanation for this exclusion. Furthermore, there are other Florida federal

-21-

courts which have awarded local travel time in connection with litigation-related proceedings.  See, e.g., Rodilla v. TFC-RB, LLC, 2009 WL 88492 at *2 (S.D. Fla. 2009)(awarding travel time to mediation); Kearney v. Auto-Owners Ins. Co., supra, 713 F.Supp.2d at 1379 (travel time to trial was necessary and, therefore, compensable).  Therefore, the Danow decision is not persuasive.  Consequently, I recommend that the defendant's objection to Mulholland's local travel time identified in Exhibit B-4 be rejected.

### 4. Exhibit B-5: Paralegal work done by Mulholland

The defendant requests that 20.7 hours of time billed by attorney Mulholland be compensated at a paralegal rate because the time entries purportedly reflect "activities that are normally performed by a paralegal" (Doc. 220-1, p. 8; Doc. 219-2, pp. 37-39).

This objection is unpersuasive because the majority of these time entries are attorney work.  For example, the review and analysis of discovery requests, preparation of discovery responses, and the identification of documents that are responsive to discovery requests (see Doc. 219-2, p. 37) is legal work.  Thus, as the plaintiff states, these activities "are the responsibility of an attorney[,] th[ey] required legal analysis and were necessary for development of case theories and litigation strategy" (Doc. 225-1, p. 22).

-22-

Simply because paralegals may assist with discovery does not show that it is not attorney work. To the contrary, "[w]ork by paralegals is recoverable only to the extent that the paralegal performs work traditionally done by an attorney." Jean v. Nelson, 863 F.2d 759, 778 (11ᵗʰ Cir. 1988). The defendant has also identified in this exhibit time entries that are attorney work, but have a clerical component (see, e.g., Doc. 219-2, p. 38, 4/29/10). It is unreasonable to attempt to separate out the clerical aspect from the small amount of time involved in those tasks.

       On the other hand, Exhibit B-5 includes one hour of communications with criminal defense counsel in order for plaintiff's counsel to determine when the plaintiff's case will be called for trial (id., p. 39, 4/14, 4/26, 6/1/11). Such inquiries are secretarial work. I therefore recommend that the defendant's requested time reduction for Exhibit B-5 be accepted to the extent that one hour of time be discounted from Mulholland's time sheets.

       5. Ex. B-6: Duplicative time

       The defendant argues that the plaintiff's attorneys "have duplicated their efforts on several occasions" (Doc. 219, p. 11). For this reason, it seeks to exclude 13.6 hours of Mulholland's time, and approximately 26 hours of time by VPL timekeepers (Doc. 220-1, p. 9).

-23-

"There is nothing inherently unreasonable about a client having multiple attorneys." <u>Norman</u> v. <u>Housing Authority of the City of Montgomery</u>, <u>supra</u>, 836 F.2d at 1302. For that reason, a reduction for redundant hours "is warranted only if the attorneys are unreasonably doing the same work. An award for time spent by two or more attorneys is proper as long as it reflects the distinct contribution of each lawyer to the case and the customary practice of multiple-lawyer litigation." <u>Johnson</u> v. <u>University College of Univ. of Ala. in Birmingham</u>, 706 F.2d 1205, 1208 (11th Cir. 1983), <u>cert</u>. <u>denied</u>, 464 U.S. 994 (1983).

The duplicative entries generally involve multiple attorneys reviewing case filings and documents, and communications and meetings amongst counsel (Doc. 225, p. 5; <u>see</u> Doc. 219-2, pp. 40-53). The plaintiff responds that it was necessary for counsel to confer regarding case management and strategy, and that these communications prevented duplication of effort by efficiently dividing labor (Doc. 225, p. 5; Doc. 225-1, pp. 25, 32). Further, the plaintiff states that, when co-counsel appeared together at meetings or hearings, it was frequently a requirement of the court that all trial counsel be in attendance (Doc. 225, p. 5).

Time spent in attorney conferences is generally compensable for each participant for division of labor and strategic purposes. <u>See</u> <u>National Ass'n of Concerned Veterans</u> v. <u>Secretary of Defense</u>, 675 F.2d 1319, 1337 (D.C. Cir.1982); <u>Review Publications, Inc.</u> v. <u>Navarro</u>, 1991 WL 252962 at *6 (S.D. Fla.1991)(unpub. dec.). Thus, "attorneys must spend at least some of their time conferring with colleagues ... to ensure that a case is managed in an effective as well as efficient manner." <u>National Ass'n of Concerned Veterans</u> v. <u>Secretary of Defense</u>, <u>supra</u>, 675 F.2d at 1337. Furthermore, it is generally reasonable for all trial counsel to review case filings and documents to remain apprised of the progression of the case.

Moreover, the plaintiff has shown that the attorneys each provided a distinct contribution to this case. Thus, the plaintiff explains that Marino was lead trial counsel and strategist, Mulholland had the greatest knowledge of the history of the case and participated in strategic decisions (Doc. 225, p. 6), and Pincavage "oversaw day-to-day matters in this lawsuit, including communicating with opposing counsel, conducting research, drafting nearly all written documents, [and] court filings" (<u>id.</u>, p. 5). Thus, each attorney had a distinct role which justified their review of case-related documents.

Under these circumstances, it is appropriate to reject the defendant's conclusory objections to time entries as duplicative or unnecessary. See Norman v. Housing Authority of the City of Montgomery, supra, 836 F.2d at 1301 ("[g]eneralized statements that the time spent was reasonable or unreasonable ... are not particularly helpful and not entitled to much weight" and "[a]s the district court must be reasonably precise in excluding hours thought to be unreasonable or unnecessary, so should be the objections and proof from fee opponent").

Accordingly, I recommend that the defendant's objections to counsel's time based on duplication be rejected. However, it is appropriate to reduce the entry on 4/22/11 by Mulholland for 1.1 hours because the description of that activity was completely redacted (Doc. 219-2, p. 42).

### 6. Ex. 7: Trial time

The defendant requests a reduction of attorney and paralegal hours because "an excessive amount of time was billed by all timekeepers, except attorney Marino[,] for unspecified trial preparation" (Doc. 220-1, p. 9; see Doc. 219-2, pp. 54-57). The defendant correctly points out that the trial preparation time entries lack adequate detail.

Thus, Mulholland's time entries merely state "Trial preparation" (Doc. 219-2, p. 54). Similarly, Pincavage's time entries primarily consist of "Plan and prepare for trial" and trial-related meetings (id., p. 56). Moreover, Mulhall's redacted time entries do not identify what trial preparation tasks she performed (id., p. 57).

It is the fee applicant's burden to adequately document the hours expended. Hensley v. Eckerhart, supra, 461 U.S. at 437. Although counsel is not required to record in great detail how each minute of his time was expended, "the general subject matter of the time expenditures ought to be set out with sufficient particularity so that the district court can assess the time claimed for each activity." Norman v. Housing Authority of the City of Montgomery, supra, 836 F.2d at 1303. Consequently, a court may discount a time entry when the description of the work performed is overly vague. See Florida Patient's Compensation Fund v. Rowe, supra, 472 So.2d at 1150.

It is not possible to determine the reasonableness of the time billed for trial preparation because the time records lack any specificity. Additional detail is necessary, especially considering that four timekeepers billed 196.1

hours in preparation for a three-day trial on a simple bad faith issue.[7] Thus, absent adequate descriptions of the work performed, it appears that the number of hours billed for trial preparation exceed what was reasonable to prosecute the claims.

The plaintiff's reply that Mulholland "has represented [the plaintiff] since the inception of this lawsuit and therefore [is] the most knowledgeable about its history and the Court's rulings" (Doc. 225-1, p. 39) does not meaningfully respond to the defendant's contention that the entries lacked specificity. The plaintiff responds that Pincavage's trial preparation activities included the admissibility of an expert deposition and assisting in the preparation of all witnesses (id., p. 41).[8] However, this information was not included in the time entries, nor does it substantiate Pincavage's entitlement to 60+ hours of trial preparation.

The defendant asserts that Mulholland's trial preparation time of 56.5 hours should be reduced to 35, Pincavage's 60.3 hours of trial preparation

___

[7]This time comprises 151.6 hours by three attorneys and 44.5 hours by a paralegal (see Doc. 219-2, pp. 54-57).

[8]While the plaintiff also cites research during trial, this is not a task in preparation for trial.

be reduced to four, and that Mulhall's trial preparation time be eliminated (Doc. 220-1, pp. 9-10; Doc. 219-2, pp. 54-57). These reductions are excessive because these timekeepers did conduct trial preparation. On the other hand, a significant reduction is warranted for the vagueness of the entries. I therefore recommend that their time be reduced by the following amounts: Mulholland-17 hours, Pincavage-20.3 hours, and Mulhall-10 hours.

Additionally, the defendant argues that Pincavage's and Mulhall's trial attendance time should be reduced. In this regard, the defendant argues that Pincavage's trial presentation was limited to one witness examination, and that Mulhall's trial attendance time should be excluded because "it was not necessary for plaintiff to be represented by three attorneys and a paralegal at a trial that lasted approximately 3.5 days" (Doc. 220-1, p. 10).

However, the plaintiff explained that Pincavage also conducted research and handled other behind the scenes matters at trial (Doc. 225, p. 6). Further, given her day-to-day participation in this case after VPL was retained as co-counsel, she acquired exclusive knowledge of certain matters that also made her presence at trial reasonable (id., pp. 5, 6). Therefore, I recommend that Pincavage's trial time not be reduced.

-29-

Furthermore, the plaintiff represents that Mulhall played a critical role in document maintenance and production at trial (see id., p. 6 & n.4). Therefore, other than a five-hour reduction for "return travel from Tampa" (Doc. 219-2, p. 57, 6/24/11), which is non-compensable travel time, I recommend that Mulhall's trial attendance time not be reduced.

On the other hand, the time sheets reflect that three attorneys and a paralegal billed 8.5 hours for trial deliberations (see id., p. 54, 6/23/11). This is unreasonable. Thus, there is no indication that Judge Whittemore directed the parties to remain at the courthouse during deliberations, and Mulholland's legal office is in Tampa, so he could have returned to work. Therefore, it is appropriate to reduce Mulholland's trial time by 8.5 hours. A similar reduction for the VPL timekeepers is not recommended because they are from Miami and, therefore, they were unable to return to their office.

### 7. Ex. B-10: Pre-trial entries by paralegals

The defendant requests a 25% reduction of Mulhall's time, and to exclude Lowe's time, because the time entries are so heavily redacted that their activities cannot be discerned (Doc. 219, pp. 14-15; Doc. 219-2, pp. 60-63). This objection is meritorious.

For example, there are numerous time entries by Mulhall which merely state "Review/analyze _____" (see, e.g., Doc. 219-2, p. 60, 2/3/11; 4/13/11; 4/20/11; 4/29/11; 5/3/11; 6/2/11; 6/10/11). Similarly, Lowe's time entries are essentially a list of verbs: review, continue, attend, retrieve (id., p. 63). The defendant, not surprisingly, states that "[t]he over-redaction of the time records has interfered with a thorough review and analysis of the fee claim" (Doc. 220-1, p. 5).

Thus, the defendant lacks information from which it can determine the reasonableness of the work, see Webb v. Dyer County Bd. of Ed., 471 U.S. 234, 242 (1985)(the fee movant bears the burden of properly documenting appropriate hours), or assert a meaningful objection to the time entries. See Norman v. Housing Authority of the City of Montgomery, supra, 836 F.2d at 1301; Centex-Rooney Const. Co., Inc. v. Martin County, supra, 725 So.2d at 1259 (objections and proof from fee opponents must be reasonably precise in excluding hours thought to be unreasonable or unnecessary).

Plaintiff's counsel responds that the time entries were redacted to protect their work product in light of the pending appeal, and argue that disclosure of the redacted information "would provide [the defendant] with an incredible advantage that is simply not permitted by law" (Doc. 225, p. 2; see

-31-

<u>also</u> Doc. 225-1, p. 45). Although every time entry has not been examined, a comparison of the redacted and unredacted time entries shows that redaction on work product grounds is patently frivolous. For example, Mulhall's redacted time entry for 2/3/11 states "Review/analyze," and the unredacted time entry provides: "Review/analyze <u>and organize documents and transcripts received from Jason Mulholland</u>" (unredacted time sheet, p. 2, emphasis on the unredacted portion). There is no cognizable basis to redact the words "and organize documents and transcripts received from Jason Mulholland" on work-product grounds. Other examples of baseless redactions include:

> 4/29/11 Mulhall entry redacted: "Review/analyze"
> Unredacted:          "Review/analyze <u>trial order and judge's website re: witness and exhibit list</u>"

> 4/04/11 Lowe entry redacted: "Review"
> Unredacted:          "Review <u>client's original documents/file documents</u>"

> 4/15/11 Lowe entry redacted: "Review"
> Unredacted:          "Review <u>file/documents in preparation for trial</u>"

In sum, the redacted information consists of unspecific information which barely identifies the work that was performed. It certainly does not reveal the litigation team's mental impressions or otherwise jeopardize the

plaintiff's appeal or re-trial strategy. Therefore, because these entries were unjustifiably redacted to the extent that the defendant could not discern the tasks performed, I recommend that the defendant's request to reduce by 25% Mulhall's entries, and the exclusion of Lowe's entries, be accepted. This results in a reduction of 12 hours of Mulhall's time and the elimination of Lowe's 23.5 hours of time entries.

In sum, the defendant has identified 174.4 hours billed by attorneys and 50.5 paralegal hours that are not compensable. Otherwise, the defendant has not persuasively argued that time entries should be reduced or eliminated. Therefore, the number of hours of legal work I recommend be reimbursed to each individual in this action is as follows:

| Counsel or Staff | Number of hours |
|---|---|
| Marino | 99.4 |
| Mulholland | 462.5 |
| Pincavage | 186.4 |
| Mulhall | 125.3 |
| Lowe | 0 |
| Total attorney hours: | 748.3 |

It should be noted that the defendant's failure to argue persuasively that the records contain more excessive time does not mean that the plaintiff's claim does not include such hours. However, since the defendant has not articulated sufficiently specific objections to these hours, it is not recommended that they be reduced further. See Norman v. Housing Authority of the City of Montgomery, supra, 836 F.2d at 1301 (proof from fee objections must be specific); Centex-Rooney Const. Co., Inc. v. Martin County, supra (same).

B. HOURLY RATES.

The second half of the lodestar equation requires the court to determine a reasonable hourly rate for the services of the prevailing party's attorney. In Florida Patient's Compensation Fund v. Rowe, supra, 472 So.2d at 1150-51, the Florida Supreme Court stated:

> In establishing this hourly rate, the court should assume the fee will be paid irrespective of the result, and take into account all of the [Rule 4-1] factors except the "time and labor required," the "novelty and difficulty of the question involved," the "results obtained," and "[w]hether the fee is fixed or contingent." The party who seeks the fees carries the burden of establishing the prevailing "market rate," i.e., the rate charged in that community by lawyers of reasonably comparable skill, experience and reputation, for similar services.

-34-

Further, "[t]he court ... is itself an expert on the question [of attorney's fees] and may consider its own knowledge and experience concerning reasonable and proper fees." Norman v. Housing Authority of the City of Montgomery, supra, 836 F.2d at 1303.

Marino and Mulholland request fees based on an hourly rate of $475 and $425, respectively (Doc. 202, p. 8). Pincavage requests a fee based on an hourly rate of $275, and paralegal Mulhall seeks an hourly rate of $180 (id.). The defendant argues that the requested rates are too high, and contends that reasonable hourly rates for Marino, Mulholland, Pincavage, and Mulhall are: $325, $275, $175, and $95, respectively (Doc. 219, pp. 5, 20).

Marino is a partner with the VPL law firm in Miami, which specializes almost exclusively in insurance disputes (Doc. 202, p. 6). Marino has 14 years of litigation experience, the majority of which involved insurance-related disputes (id.). Since December 2010, Marino has been involved in this case "as the primary decision-maker and strategist, along with Attorney Mulholland"(id.), and he was lead counsel at trial (Doc. 225, p. 6).

Mulholland, a solo practitioner in Tampa, "focus[es] on litigating insurance disputes and personal injury cases" (Doc. 202, p. 6). He has 12 years of litigation experience (id.). Mulholland was involved in all aspects of the

-35-

case and is identified as a "primary decision-maker and strategist" along with Marino (id.).

Pincavage is an associate at VPL with five years of litigation experience (id., p. 7). Pincavage drafted motions, communicated with opposing counsel, conducted legal research, and coordinated trial preparation (id.).

Mulhall, a certified senior paralegal, has been employed as a paralegal for 18 years (Doc. 225, p. 4; Doc. 225-2, p. 7).

The plaintiff's fee expert, Diecidue, opines that counsel's rates and paralegal Mulhall's rate are reasonable because they "fall within the range of market rates in our community" (Doc. 202-2, ¶10).

The defendant controverts that these hourly rates are customary for the Tampa Bay area (Doc. 219, p. 6). Oonk, the defense fee expert, states that she has frequently reviewed billing statements in insurance coverage cases and, thus, she is "personally familiar with market rates in the Tampa area for attorneys litigating insurance related disputes" (Doc. 220-1, ¶¶3, 4). Oonk opines that "the highest rates paid for experienced insurance litigation counsel handling the type of dispute at issue in this case in the Tampa area" ranges between $250 and $350 per hour for attorneys with Marino and Mulholland's years of legal experience, and between $125 to $175 for Pincavage's level of

experience (<u>id.</u>, ¶8). Further, she asserts that "Mulhall's billing rate is not within the realm of rates typically charged for paralegal services in the Tampa market, even for a certified paralegal," and opines that reasonable hourly paralegal rates range between $60 and $100 per hour (Doc. 220-1; <u>id.</u>, ¶13).

Considering the probative evidence in this case, my knowledge of the prevailing market rate in Tampa for insurance litigators with comparable experience and skill, and the presentations of Marino and Mulholland during court proceedings before me, reasonable hourly rates for plaintiff's counsel are: Marino-$425 (which includes an enhancement of $25); Mulholland-$275; Pincavage -$200; and Mulhall-$95. <u>See</u> <u>Norman</u> v. <u>Housing Authority of the City of Montgomery</u>, <u>supra</u>, 836 F.2d at 1303 (the court is itself an expert).

In arriving at this conclusion, I have given some weight to Oonk's expert opinions, but essentially disregard Diecidue's opinions because they are vague and conclusory. <u>See</u> <u>id.</u> at 1299 ("[t]he weight to be given to opinion evidence ... will be affected by the detail contained in the testimony...."). Thus, Diecidue fails to specify the range of market rates he is referring to or the hourly rates paid (versus what is charged). <u>See</u> <u>id.</u> at 1301 ("the best information ... is usually a range of fees set by the market place, with the variant best explained by reference to an attorney's demonstrated skill").

Furthermore, the plaintiff's requested rates are too high for the local market. Thus, the plaintiff's citations to caselaw from the Southern District of Florida (Doc. 202, p. 7) are not probative of a reasonable hourly rate because the "relevant market" for purposes of determining the reasonable hourly rate for an attorney's services is "the place where the case is filed." American Civil Liberties Union of Georgia v. Barnes, 168 F.3d 423, 437 (11th Cir. 1999). Attorney rates in the Miami-Ft. Lauderdale area are generally higher than in Tampa. In order to recover the non-local rates of an attorney, the plaintiff must show there was a lack of competent local counsel who were willing and able to handle his claims. Id. The plaintiff did not satisfy this burden.

Rather, the plaintiff argues that Miami rates should be awarded because the defendant chose counsel from Ft. Lauderdale (Doc. 225, p. 4). The defendant's selection of Fort Lauderdale counsel (at a much lower hourly rate than plaintiff's counsel) does not show that the plaintiff could not find competent counsel in Tampa to litigate his case. See American Civil Liberties Union of Georgia v. Barnes, supra, 168 F.3d at 437.

The plaintiff also emphasizes that VPL's expertise in this type of litigation (Doc. 202, p. 5). However, "[a] prevailing plaintiff is not entitled to

-38-

have the losing party pay for an attorney with the most expertise on a given legal issue, regardless of price, but only for one with reasonable expertise at the market rate." American Civil Liberties Union of Georgia v. Barnes, supra. Accordingly, the reasonable hourly rate should be based on customary rates in Tampa for an attorney with comparable credentials.

As indicated, I have given some weight to Oonk's expert opinions regarding hourly rates because they are more detailed than Diecidue's, and Oonk's opinions are more consistent with my knowledge and experience of a reasonable hourly rate in comparable circumstances. See Norman v. Housing Authority of the City of Montgomery, supra (the court is itself an expert).

However, I do not find persuasive Oonk's opinion that a reasonable hourly rate for Marino is $325, in light of his specialized experience and exemplary performance in this case. As indicated, Marino has 14 years of experience, from which he clearly has developed expertise in this area of the law. Further, Marino displayed before me a thorough knowledge of the subject matter, and he was skillful in his presentation. Unquestionably, he impressed me as a superior insurance litigator. Significantly, the defendant "does not dispute [] Marino's competency as a strategist and trial attorney" (Doc. 219, p. 8).

-39-

Furthermore, the favorable result in this case is properly attributable to Marino's superior performance. Thus, Marino was lead counsel at trial (Doc. 225, p. 6) and a "primary decision-maker and strategist in this case" (Doc. 202, p. 6).[9] Marino stated that the district court was close to directing a verdict in the defendant's favor and, notwithstanding, the plaintiff was able to achieve a favorable jury result.

I consider an hourly rate of $375-$400 to be consistent with Tampa rates for highly experienced attorneys. For the reasons stated above, Marino is entitled to an hourly rate of $400. Additionally, I recommend, in lieu of a contingency enhancement, an hourly enhancement of $25 be added to Marino's rate, based on the excellent result he achieved with a relatively low expenditure of time.

Although, as discussed below, an overall multiplier is inappropriate in this case, the United States Supreme Court recognizes that an attorney may deserve an enhancement for superior performance that is not adequately accounted for in the lodestar calculation. See Perdue v. Kenny A.

---

[9]With regard to Mulholland's role at trial, the plaintiff stated his attendance was necessary because he "had the greatest knowledge of its history and the court's rulings" (Doc. 225, p. 6).

ex rel. Winn, 130 S.Ct. 1662, 1674 (2010). Thus, "enhancement may be appropriate so that an attorney is compensated at the rate that the attorney would receive in cases not governed by the federal fee-shifting statutes." Id. Marino charges an hourly rate of $475 (Doc. 202, p. 6). Although that rate is too high for Tampa, this evidence supports a performance enhancement for Marino. Accordingly, I recommend that Marino be awarded an hourly rate of $425.

On the other hand, I reject the plaintiff's contention that Mulholland is deserving of an hourly rate of $425 because he has not demonstrated extraordinary skill in prosecuting this case. Thus, Mulholland's discovery practice did not reflect the skill of a seasoned litigator and, in my opinion, contributed to the multiplication of proceedings in this case. For example, the overbreadth of discovery requests were more indicative of a fishing expedition than an experienced litigator who properly focuses his discovery efforts. The defendant also emphasizes Mulholland's procedurally deficient motions and subpoenas (Doc. 219, p. 8). These circumstances are properly considered in determining an appropriate hourly rate. See Norman v. Housing Authority of the City of Montgomery, supra, 836 F.2d at 1301 ("A lawyer who has to educate himself in [trial practice and/or substantive law] ...

-41-

may ultimately be as effective as a specialist, but he has no right to expect to be reimbursed at the same rate as a lawyer who begins his preparation with the finer points raised by the particular case.").

Moreover, Mulholland appeared before me on several occasions regarding discovery disputes, and his presentation and performance clearly were not akin to a top litigator. Significantly, the retention of two insurance litigators from Miami as co-counsel, one of whom became lead trial counsel, further belies the conclusion that Mulholland had expertise worthy of a $425 hourly rate.

In sum, Mulholland's performance does not warrant an hourly rate that I reserve for highly experienced attorneys who demonstrate extraordinary skill. See id. at 1300 ("Legal skill may be a function of experience, but that is not always the case."). I therefore recommend that Mulholland be awarded an hourly rate of $275. I note that, relative to other hourly rates for attorneys with comparable experience, this rate is generous. Thus, although a lower hourly rate for Mulholland would not be unreasonable, my recommendation is influenced by the fact that the defendant does not dispute that $275 is a reasonable rate for Mulholland (see Doc. 219, p. 20).

Pincavage, an attorney with five years of legal experience, "oversaw day-to-day matters in this lawsuit, including communicating with opposing counsel, conducting research, drafting ... written documents, [and] court filings" (Doc. 225, p. 5). In my experience, a reasonable hourly rate in Tampa for an attorney with five years of experience is $200. The plaintiff has not identified any extraordinary skill or performance by Pincavage warranting a higher hourly rate. Accordingly, I recommend Pincavage be compensated at an hourly rate of $200.

Mulhall, a certified paralegal with 18 years of experience, requests an hourly rate of $180 (id., p. 4). The defendant argues that $95 is a reasonable hourly rate for a paralegal in Tampa (Doc. 220-1, p. 6). My experience is consistent with the opinion of defense fee expert Oonk that a reasonable hourly rate for an experienced paralegal in the Tampa area is $95.

Additionally, the plaintiff has not shown that any of the other Rowe factors warrant a higher hourly rate in this case. 472 So.2d at 1150-51. Although plaintiff's counsel states that their "time-intensive involvement in this lawsuit precluded them from undertaking other work" (Doc. 202, p. 10), this conclusory assertion is unsubstantiated by any evidence of work they

-43-

declined due to this case. Further, it is unpersuasive considering that the responsibilities in this case were split among three attorneys and two paralegals.

In addition, there was no probative evidence of time limitations. As the defendant noted, a protective agreement between the plaintiff and Crawford provided that attempts to collect the underlying judgment were stayed until resolution of the bad faith litigation (Doc. 219, p. 10). Finally, plaintiff's counsel has not identified any previous relationship with the plaintiff so that factor does not affect the determination of a reasonable hourly rate.

Therefore, for the foregoing reasons, I recommend that the hourly rates of plaintiff's counsel be set as follows:

| Counsel or Staff | Rate per hour |
| --- | --- |
| Marino | $425 |
| Mulholland | $275 |
| Pincavage | $200 |
| Mulhall | $95 |

Accordingly, the sum of these hourly rates multiplied by the number of hours expended in this case, results in the following lodestar amount:

| Counsel or Staff | Hourly Rate | Number of Hours | Sum |
|---|---|---|---|
| Marino | $425 | 99.4 | $ 42,245.00 |
| Mulholland | $275 | 462.5 | $127,187.50 |
| Pincavage | $200 | 186.4 | $ 37,280.00 |
| Mulhall | $95 | 125.3 | $ 11,903.50 |
| **Total Lodestar** | | | **$218,616.00** |

IV.

The plaintiff contends that the court should adjust this lodestar figure upward by a factor of 2.0 (Doc. 202, p. 10). The defendant opposes the application of any multiplier, contending that the circumstances of this case do not warrant an enhancement of the lodestar (Doc. 219, pp. 15-19).

When the prevailing party's counsel is employed on a contingent fee basis, the trial court must consider whether a multiplier of the lodestar is appropriate. Standard Guar. Ins. Co. v. Quanstrom, supra, 555 So.2d at 834-35.[10] However, its application is discretionary. Id. at 831. Further, as recently reiterated by the U.S. Supreme Court in Perdue v. Kenny A. ex rel. Winn, supra, 130 S.Ct. at 1673, there is a "strong presumption" that the lodestar reflects a

_____

[10]The multiplier in breach of contract cases may range from 1 to 2.5, depending upon the likelihood of success at the outset of the litigation. See Standard Guaranty Ins. Co. v. Quanstrom, supra, 555 So.2d at 834.

-45-

reasonable statutory fee, and enhancements may be awarded only in "rare" and "exceptional" circumstances.[11]

In determining whether a multiplier is necessary, the Florida Supreme Court has stated that the following factors are to be considered (Standard Guar. Ins. Co. v. Quanstrom, supra, 555 So.2d at 834):

> (1) whether the relevant market requires a contingency fee multiplier to obtain competent counsel; (2) whether the attorney was able to mitigate the risk of nonpayment in any way; and (3) whether any of the factors set forth in Rowe [472 So.2d 1145] are applicable, especially, the amount involved, the results obtained, and the type of fee arrangement between the attorney and his client. Evidence of these factors must be presented to justify the utilization of a multiplier.

However, factors adequately accounted for in the lodestar cannot be the basis for enhancing the lodestar. Perdue v. Kenny A. ex rel. Winn, supra, 130 S.Ct. at 1673. Taking into consideration the relevant factors, it is recommended that the lodestar figure should not be adjusted upward in this case.

---

[11]To the extent that Perdue announces any principles not stated by the Florida Supreme Court, there is no reason to think that the Florida Supreme Court would not adopt the U.S. Supreme Court's guidance in Perdue in determining an appropriate fee under §627.428. Thus, as indicated, Florida adopted the federal lodestar method for determining a reasonable attorney's fee, Fla. Patient's Compensation Fund v. Rowe, supra, 472 So.2d at 1150, and the Florida Supreme Court has previously modified its use of the contingency fee multiplier "in view of ... decisions by the United States Supreme Court." Standard Guaranty Ins. Co. v. Quanstrom, supra, 555 So.2d at 829.

With regard to the first factor, the Florida Supreme Court has stated that, "[b]efore adjusting for risk assumption, there should be evidence in the record, and the trial court should so find, that without risk-enhancement [the] plaintiff would have faced substantial difficulties in finding counsel in the local or relevant market." Sun Bank of Ocala v. Ford, 564 So.2d 1078, 1079 (Fla. 1990), quoting Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 483 U.S. 711, 731 (1987). The plaintiff has not presented probative evidence that he would have had substantial difficulty finding competent counsel absent a multiplier. Thus, the plaintiff presents no evidence regarding his efforts to find counsel nor does he state that he had difficulty finding counsel.

Plaintiff's counsel makes the conclusory assertion that "it is undisputed that the Tampa legal market requires a contingent fee multiplier to obtain competent counsel" (Doc. 202, p. 10). However, the defendant disputes the necessity of a contingency fee multiplier (Doc. 219, pp. 15-17; Doc. 220-1, p. 12), and plaintiff's counsel's "say so" is insufficient to show that an enhancement is necessary to obtain competent counsel. Gimenez v. American Security Ins. Co., 2009 WL 2256088 at *3 (M.D. Fla. 2009)(unpub. dec.). Furthermore, based on my experience, there are law firms experienced in

-47-

insurance litigation that are willing to take cases based on an unenhanced
statutory fee, so that it is not apparent that the expectation of a multiplier would
be dispositive in counsel accepting the case.

   Diecidue, the plaintiff's fee expert, opined in a vague and
conclusory manner that, "due to the insurance company's aggressive litigation
posture, it is my opinion that competent counsel for a case with these kinds of
issues could not be secured without the realistic prospect of a multiplier upon
successful outcome" (Doc. 202-2, ¶11). Diecidue fails to specify the litigation
tactics that warrant a multiplier. See Pennsylvania v. Delaware Valley Citizens'
Council for Clean Air, supra, 483 U.S. at 716 (the fact that the defendant is
"difficult or obstreperous does not enter into assessing the risk of loss or
whether that risk should be compensated"). Moreover, to the extent aggressive
litigation tactics increased the number of hours that an attorney expended, that
increase would be covered by the lodestar. Further, the purported litigation
tactics and issues are relevant only if they were apparent at the beginning of
the case. See Michnal v. Palm Coast Development, 842 So.2d 927, 934 (Fla.
App. 2003)(the determination of whether a multiplier would have been
necessary to obtain competent counsel is based on the circumstances at the
outset of the case). Therefore, it is not reasonable to infer from Diecidue's

conclusory statements that the plaintiff would have had significant difficulties in obtaining representation without a contingency multiplier.

In sum, the plaintiff failed to demonstrate that, without a multiplier, he would have had significant difficulties in obtaining representation on a contingency basis. See Perdue v. Kenny A. ex rel. Winn, supra, 130 S.Ct. at 1674 (it is the fee applicant's burden to present specific evidence that the lodestar fee would not have been "adequate to attract competent counsel").

Another consideration in determining the propriety of an enhancement is whether there was an opportunity to mitigate non-payment of the attorney's fee. Standard Guar. Ins. Co. v. Quanstrom, supra, 555 So.2d at 834. Plaintiff's counsel accepted this case on a pure contingency basis, thereby incurring a risk of no payment for their services with no opportunity to mitigate non-payment of the attorneys' fee if the suit were unsuccessful (Doc. 202, p. 10). However, the existence of a contingency fee agreement does not mandate the application of a multiplier. Sun Bank of Ocala v. Ford, supra, 564 So.2d at 1079; Gimenez v. American Security Ins. Co., supra, 2009 WL 2256088 at *4.

Indeed, such an adjustment seemingly would be precluded in this instance because there is to be no adjustment for risk assumption without a

-49-

finding that the plaintiff would have faced substantial difficulties in obtaining counsel. Sun Bank of Ocala v. Ford, supra; see also Bell v. U.S.B. Acquisition Co., Inc., supra, 734 So.2d at 411 ("[a] primary rationale for the contingency risk multiplier is to provide access to competent counsel for those who could not otherwise afford it."); Norman v. Housing Authority of the City of Montgomery, supra, 836 F.2d at 1302 ("enhancement will be awarded only where it is shown that such enhancement is necessary to assure the availability of counsel"). Moreover, it is my opinion that the mandatory statutory fee award to prevailing plaintiffs in insurance litigation adequately mitigates this circumstance.

Additionally, the contingency nature of the fee is already taken into account to a significant extent in the hourly rate, as evidenced by the disparity between the hourly rates of plaintiff's counsel and defense counsel. Thus, defense counsel, both of whom have significantly more experience than plaintiff's counsel, charge hourly rates of $225 and $185, less than one-half of Marino's rate (see Doc. 219, pp. 7-8).

Emphasis is also placed on the results and the amount involved in the litigation. Standard Guar. Ins. Co. v. Quanstrom, supra, 555 So.3d at 834. Plaintiff's counsel prevailed in the lawsuit and achieved a completely

successful result. In consideration of that success, they are being awarded a substantial attorneys' fee. Thus, I find that counsel's success is adequately accounted for in the lodestar with the exception of Marino, for whom I recommended an hourly rate enhancement. In other words, in lieu of an enhancement to all the attorneys and their paralegals, I have only recommended an enhancement to Marino based on his superior performance.

Next, the plaintiff contends that the court should consider a multiplier because "[t]his matter required time and labor well in excess of the average case, not only due to the extensive discovery and motion practice in this case, but also the tenacious defense mounted by Nationwide" (Doc. 202, p. 10). It is noted that the defendant also characterizes plaintiff's counsel as having an "unreasonably aggressive and antagonistic litigation strategy" (Doc. 219, p. 8). Regardless, the additional time expended due to the parties' purported aggressive litigation strategies is reflected in the number of hours for which counsel is compensated. See Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, supra, 483 U.S. at 730 ("The matter may have been difficult, wearing, and time-consuming, but that kind of effort has been recognized in the lodestar award."). No additional enhancement is warranted on this ground.

The plaintiff also contends that the court should consider that "[t]his matter involved difficult issues pertaining to attorney-client and work product privileges in an insurance bad faith context" (Doc. 202, p. 10). This case was not complex. As Judge Whittemore summarized, "[t]his is a plain and simple failure to settle case" (Doc. 219-1, p. 18). Furthermore, although attorney-client and work product disputes arose, they were primarily in the context of third party discovery regarding attorneys Aiken and Swope, and they were neither novel nor complex for an experienced insurance litigator. Moreover, the purported complexity of the case is accounted for in the lodestar computation. Florida Patient's Compensation Fund v. Rowe, supra, 472 So.2d at 1150; Perdue v. Kenny A. ex rel. Winn, supra, 130 S.Ct. at 1673. Therefore, this circumstance does not warrant an enhancement.

In sum, the plaintiff has failed to show circumstances that warrant a contingency multiplier of the lodestar. See Perdue v. Kenny A. ex rel. Winn, supra, 130 S.Ct. at 1669 ("strong presumption" that the lodestar is sufficient to attract competent counsel, and the party seeking enhancement has the burden of identifying a factor that the lodestar does not take into account adequately and proving with specificity that an enhanced fee is justified). To the contrary, it would substantially exceed the top range of reasonableness if the lodestar

-52-

were enhanced over what is already a substantial amount. Thus, the effect of the plaintiff's requested multiplier, even after the reduction in the hourly rates, increases the rates to $400-$850 an hour, and the plaintiff has not shown that this constitutes a reasonable fee in this case.

Finally, I find that this fee fully satisfies the statute's purpose of "discourag[ing the] contesting of valid claims of insureds." Fireman's Fund Ins. Co. v. Tropical Shipping and Const. Co., Ltd., 254 F.3d 987, 1010 (11th Cir. 2001). Accordingly, I recommend that the plaintiff be awarded an attorneys' fee of $218,616.

## V.

Finally, the plaintiff seeks recovery of his costs totaling $13,502.12, pursuant to 28 U.S.C. 1920 (Doc. 202, pp. 11-12; Doc. 202-2). These costs include a $410 filing fee, $415 for the service of summonses and subpoenas, $9,662.31 in deposition fees, $2,854.81 for photocopying charges, and $160 in witness fees (Doc. 202-2, p. 7). The defendant contends that $3,209.03 of those costs are not recoverable (Doc. 219, pp. 19-20; Doc. 220-1, pp. 13-14).

The defendant argues that the plaintiff may not recover for Wesner's service fee and $450 for her deposition (Doc. 219-2, p. 64). As

-53-

discussed above, because the plaintiff's theory regarding Wesner was a distinct and unsuccessful claim, these costs, totaling $485, are not recoverable.

Next, the defendant challenges reimbursement for $120 in surveillance costs, and $140 for expedited service of process (id.). It is the plaintiff's burden to prove that the requested costs are recoverable under §1920. Cf. Norman v. Housing Authority of City of Montgomery, supra, 836 F.2d at 1303. The plaintiff does not cite legal authority substantiating that extraordinary costs related to service, such as surveillance and rush fees, are recoverable under §1920. Further, the plaintiff fails to explain the defendant's conduct which allegedly justifies these expenditures (see Doc. 225, p. 10). Therefore, these costs, totaling $260, are not compensable.

Next, the defendant argues that the costs of the video depositions are not compensable because the plaintiff "did not use any videotaped deposition testimony in the presentation of this case at trial" (Doc. 220-1, p. 13 ). However, a deposition need not be used at trial for it to be taxable. United States Equal Employment Opportunity Commission v. W&O, Inc., 213 F.3d 600, 621 (11th Cir. 2000). Therefore, in the absence of a more cogent objection, these costs should be reimbursed. Cf. id.

-54-

.

Finally, the defendant argues that $1,464.03 in unspecified copying costs is unrecoverable (Doc. 219-2, p. 64). The burden of establishing entitlement to photocopying expenses lies with the prevailing party. See Desisto College, Inc. v. Town of Howey-in-the-Hills, 718 F.Supp. 906, 910 n.1 (M.D. Fla. 1989), aff'd, 914 F.2d 267 (11th Cir. 1990). Expenses not adequately described or documented may be rejected. Cf. American Civil Liberties Union of Georgia v. Barnes, supra, 168 F.3d at 433 (abuse of discretion to award an attorney's fee for work not adequately described and documented).

The plaintiff's photocopying charge of $1,464 for "paper exhibits, depositions at trial" (Doc. 202-2, p. 9) lacks specificity. Furthermore, the plaintiff's reply that "the photocopying charges complained of were incurred in preparing for trial" (Doc. 225, p. 10) is insufficient as well.

Section 1920(4) of Title 28, United States Code, provides that photocopying "necessarily obtained for use in the case" is compensable. Thus, general copying for the convenience of counsel is not recoverable under this statute. See Duckworth v. Whisenant, supra, 97 F.3d at 1399; Desisto College, Inc. v. Town of Howey-in-the-Hills, supra, 718 F.Supp. at 914 (denying reimbursement for photocopying because the defendants failed to differentiate

between copies necessarily obtained for use in the case and those for convenience). Consequently, I recommend that 20% of the $1,464 photocopy expense, which totals $292.80, be deducted, for lack of specificity.

In summary, the defendant has identified $1,037.80 in costs that the plaintiff has failed to show are recoverable under §1920. Accordingly, I recommend that the plaintiff be awarded costs totaling $12,464.32.

## VI.

For the foregoing reasons, I recommend that the plaintiff be awarded $218,616 in an attorneys' fee pursuant to §627.428, Fla. Stat., plus statutory interest, and $12,464.32 in costs pursuant to Rule 54(d), F.R.Civ.P.[12]

Respectfully submitted,

_Thomas G. Wilson_

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE

DATED: JANUARY 25 , 2012

---

[12]This award is made in the form of a judgment in favor of the plaintiff. §627.428(3), Fla. Stat.; Morrison v. Allstate Indemnity Co., 228 F.3d 1255, 1267 (11th Cir. 2000)(§627.428 awards the attorney's fee to the insured, not his attorney). The plaintiff is entitled to an award of prejudgment interest from the date entitlement is established. Quality Engineered Installation, Inc. v. Higley South, Inc., 670 So.2d 929, 931 (Fla. 1996).

## NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal. 28 U.S.C. 636(b)(1).